UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CA'RON ELESTRIOUS-GENO LOYD,

      Plaintiff,                            Case No. 2:20-cv-13099
                                           District Judge Sean F. Cox

v.                                         Magistrate Judge Kimberly G. Altman

JEREMY DRIGGETT,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT JEREMY DRIGGETT'S MOTION FOR SUMMARY JUDGMENT (ECF. No. 34).

### I.     Introduction

This is a civil rights case. Plaintiff Ca'Ron Loyd (Loyd), proceeding *pro se*, sued twenty-eight defendants for actions involving his arrest on September 10, 2018.[1] Upon screening of the complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, his claims were dismissed against all but two defendants, police officer Jeremy Driggett (Driggett) and state district judge Herman Marable, Jr. (Marable).

---

[1] At the time of his arrest, Loyd was on felony probation for a 2017 conviction for second degree fleeing and eluding a police officer. As a result of this incident, Loyd was convicted of a probation violation and is currently incarcerated within the Michigan Department of Corrections.

(ECF Nos. 1, 6).  Marable[2] has since been dismissed, leaving Driggett as the sole

defendant.  All pretrial matters have been referred to the undersigned.  (ECF No.

10).

Before the Court is defendant Driggett's Motion for Summary Judgment.

(ECF No. 34).  For the reasons that follow, the undersigned RECOMMENDS that

the motion be GRANTED and Loyd's claims be DISMISSED WITH

PREJUDICE.

## II.    Background

### A.    Loyd's Complaint

In the order dismissing Loyd's claims against all defendants other than

Driggett and Marable, the District Court summarized the relevant allegations as

follows:

> The Court has gleaned the following facts from the complaint, ECF No.
> 1, PageID.5-8.  On September 10, 2018, state district judge Herman
> Marable, Jr., was intoxicated and started some fights at the Autumn
> Lounge on Fenton Road in Flint, Michigan.  About 10:45 p.m. that
> night, Plaintiff and Marable had a conversation without incident.
> Marable, however, called police officer Jeremy Driggett and asked
> Driggett to arrest Plaintiff.  Driggett apprehended Plaintiff about half a
> mile away from the lounge and proceeded to punch Plaintiff in the face
> four times and sweep him to the ground.  Plaintiff hit the back of his

---

[2] Marable filed a motion to dismiss in lieu of an answer.  (ECF No. 17).  The
undersigned issued a Report and Recommendation, recommending that the motion
be granted in part and denied in part.  (ECF No. 32).  The recommendation was
adopted without objections and Loyd's federal claims against Marable were
dismissed with prejudice and his state law claims against Marable were dismissed
without prejudice.  (ECF No. 33).

head on the ground and hurt his neck, back, and shoulder as well. Driggett stomped on Plaintiff's chest and put his right knee in the middle of Plaintiff's chest, causing Plaintiff to have an asthma attack.

Driggett arrested Plaintiff for resisting and obstructing an officer and brought Plaintiff back to the Autumn Lounge so that Marable could identify him.  Plaintiff told the officers at the scene…that Driggett had assaulted him, but the officers did not take him to the Hurley Medical Center for treatment.  Instead, they allowed him to remain in Driggett's custody.

(ECF No. 7, PageID.37-38).

In his complaint, Loyd alleges "unlawful imprisonment," "police brutality," "endangerment of health and well being," and violations of "due process."  (ECF No. 1, PageID.4).

## B.    Loyd's Deposition Testimony

Loyd testified at deposition that after he left the Autumn Lounge, he walked down the street and saw two police squad cars go past him on Bristol Road.  (ECF No. 34-4, PageID.254).  He said that Driggett then pulled up, pointed a taser at him, and told him not to move.  (*Id*.).  Loyd stated that at that point, he did not "stick around," and that he left.  (*Id*.).  He said that Driggett told him to stop "like three times."  (*Id*., PageID.263).  Loyd testified that Driggett then got out of his squad car, put his taser away, and started punching him in the face.  He said that Driggett struck him on the right side of his face, from his forehead down to his cheekbone, holding his arm and "hammer punching" him.  Loyd testified that Driggett punched him four times.  (*Id*., PageID.262-263).  He testified that Driggett

3

then swept him to the ground and kicked him in the chest. (*Id.*, PageID.254). Loyd said that he got scratched under the cheekbone when Driggett slapped the hat off his head. (*Id.*, PageID.263). Driggett put Loyd in the car and drove him back to the Autumn Lounge. (*Id*). Loyd testified that after his encounter with Driggett, there were marks on his face, under his right eye and over his right eye. (*Id.*, PageID.259). He said that his photograph was taken after he was arrested. (*Id.*). Four days later, he said, when he had the opportunity to look in a mirror, he saw that he had scars on his face. (*Id.*, PageID.260).

Finally, Loyd testified that when he was in court after the September 10th incident, Driggett intimidated him by appearing in full uniform and wearing his firearm and taser. (*Id.*, PageID.262).

### C.    The Police Report

Attached as Exhibit A to Driggett's motion is his police report dated September 10, 2018. (ECF No. 34-2, PageID.228). The report states that on that date, at about 11:24 p.m., Driggett was dispatched to Autumn's Lounge regarding a disturbance. Driggett was advised that "a male black wearing a red hat made threats to Judge Marable and was last seen walking eastbound." (*Id.*). While en route, Driggett observed an individual matching that description walking eastbound on Bristol Road. He activated his emergency lights, pulled up next to

the individual, and told him to "holdup."  The individual, later identified as Loyd, said, "for what" and kept on walking.  Driggett again told Loyd to stop, but Loyd continued walking.  At that point, Driggett pointed his taser at Loyd and told him two more times to stop.  Eventually, Loyd stopped.  Driggett asked Loyd if he had come from the Autumn Lounge, and Loyd replied, "I saw someone in there that is not suppose[d] to be in there.  I saw someone in there that did something to me.  I don't care if he is a judge."  (*Id*.).  Driggett then grabbed Loyd's right hand to place him in handcuffs, at which point Loyd pulled away and stated, "Let go of my arm."  (*Id*).  Driggett grabbed Loyd by his upper body and forced him to the ground, chest down, and placed a knee on his back and told him to stop resisting.  Driggett then ordered Loyd to put his hands behind his back, and Loyd complied.  Loyd was taken into custody "with no further incident."  (*Id*.).

The report further states that Driggett transported Loyd back to the Autumn Lounge, where Marable identified Loyd as the individual who had approached him in the Lounge, who told him several times, "I'm going to fuck you up," and who made threats to come back for him as he was leaving the establishment.  (*Id*.).  Loyd was taken to the Flint City Lockup "where he was lodged for R&O [resisting an obstructing a police officer] and Threats to an Elected Official (Judge)."  (*Id*)

The report states that the entire encounter was recorded on "car camera #3."  (*Id*.).

D.      The Videos[3]

The dash-cam videos, submitted as Driggett's Exhibit D, shows a post-arrest verbal exchange between Loyd and Driggett.  As will be explained in more detail below, the videos show Loyd at the rear of the police car and later in the back seat and clearly show his face.  There are no bruises, scratches, or other visible marks on Loyd's face.  In the audio portion, Loyd is speaking clearly, and does not show any signs of asthma or respiratory difficulty.

III.    Legal Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

---

[3] Driggett was granted leave to file the video as Exhibit D in the traditional matter. (ECF No. 36).  Exhibit D consists of a zip drive containing eight video files taken from the dash cam of Driggett's police cruiser and other police cars.  The first and second files are both designated as 058519_180911_0_f.mp4.

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Loyd is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

IV.    Discussion

The complaint can be fairly read to raise the following claims against

Driggett:  (1) Fourth Amendment violation based on an arrest without probable

cause; (2) Fourth Amendment violation based on Driggett's use of excessive force;

(3) state law claim of false arrest; (4) state law claim of false imprisonment; and

(5) state law claim of assault and battery.  (ECF No. 1, PageID.4).  The Fourth

Amendment claims arise under 42 U.S.C. § 1983.

A.    Federal Claims

Section 1983 "imposes civil liability on those individuals who,

acting under color of state law, deprive a citizen of, among other things, his

federally guaranteed constitutional rights."  *Baynes v. Cleland*, 799 F.3d 600, 607

(6th Cir. 2015).  "To state a claim under § 1983, a plaintiff must set forth facts that,

when favorably construed, establish: (1) the deprivation of a right secured by the

Constitution or laws of the United States; (2) caused by a person acting under the

color of state law."  *Id*.  A private actor may be considered a person acting under

color of state law (a state actor) if "(1) the deprivation complained of was 'caused

by the exercise of some right or privilege created by the state' and (2) the

offending party 'acted together with or has obtained significant aid from state

officials, or because his conduct is otherwise chargeable to the State.' "  *Tahfs v.

Proctor*, 316 F.3d 584, 590–91 (6th Cir. 2003) (quoting *Lugar v. Edmondson Oil*

8

*Co.*, 457 U.S. 922, 937 (1982))

          1.     Fourth Amendment - Probable Cause to Arrest

As an initial matter, Diggett had sufficient basis to make an initial investigatory stop of Loyd under *Terry v. Ohio,* 392 U.S. 1 (1968), based on reasonable suspicion that criminal activity (threatening a judge) had taken place at the Autumn Lounge, and that Loyd was the individual who made the threat.  In *Terry*, "the Supreme Court held that when a law enforcement officer has a reasonable, articulable suspicion that a person may be involved in criminal activity, he may, consistent with the Fourth Amendment, conduct a brief investigatory stop of the person."  *United States v. Lewis*, 843 F. App'x 683, 690 (6th Cir. 2021) (citing *Terry*, 392 U.S. at 30-31).  "A police officer may conduct a brief, investigatory stop [known as a *Terry* stop] if he has 'reasonable suspicion' of a person's involvement in criminal activity—past, present, or future."  *United States v. Moberly*, 861 F. App'x 27, 29 (6th Cir. 2021) (citing *Robinson v. Howes*, 663 F.3d 819, 828 (6th Cir. 2011)).  In *Bazzi v. City of Dearborn*, 658 F.3d 598, 604 (6th Cir. 2011), the Sixth Circuit stated:

> A *Terry* stop "must be based on specific, objective facts," *Brown v. Texas*, 443 U.S. 47, 51, 99 S. Ct. 2637, 61 L.Ed.2d 357 (1979), and requires that "the detaining officers ... have a particularized and objective basis for suspecting the particular person stopped of criminal activity," *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S. Ct. 690, 66 L.Ed.2d 621 (1981).

The validity of a *Terry* stop is analyzed under a "totality of the circumstances test." *Mitchell v. United States*, 233 F. App'x 547, 552 (6th Cir. 2007). "Pertinent circumstances include the officer's own direct observations, dispatch information, directions from other officers, and the nature of the area and time of day during which the suspicious activity occurred." *Siders v. City of Eastpointe*, 819 F. App'x 381, 388 (6th Cir. 2020) (quoting *Hoover v. Walsh*, 682 F.3d 481, 494 (6th Cir. 2012)).

In this case, the undisputed evidence shows that Driggett received a radio dispatch call to respond to a disturbance at the Autumn Lounge, and that "a male black wearing a red hat made threats to Judge Marable and was last seen walking eastbound." (ECF No. 34-2, PageID.228). Driggett observed an individual matching that description and walking eastbound on Bristol Road, near the Autumn Lounge. Under these objective facts, Driggett was entitled under *Terry* and its progeny to stop and question Loyd.

While a *Terry* stop does not require probable cause, subsequent events nevertheless gave Driggett probable cause to arrest Loyd.[4] It is well-established that " '[a] false arrest claim under federal law requires a plaintiff to prove that the

---

[4] Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge "were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91 (1964).

arresting officer lacked probable cause to arrest the plaintiff.' " *Hart v. Hillsdale County*, 973 F.3d 627, 635 (6th Cir. 2020) (quoting *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010)).

Here, Driggett ordered Loyd to stop so that he could continue his preliminary investigation under *Terry*.  By Loyd's own testimony, Driggett told him to stop three times, yet he disobeyed those orders and kept walking away from Driggett.  At that point, Driggett had probable cause to arrest Loyd for resisting and obstructing a police officer under M.C.L. § 750.81d(1), which provides that:

> an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

Also, § 750.81d(7) (a) provides that the term " '[o]bstruct' includes the use or threatened use of physical interference or force *or a knowing failure to comply with a lawful command*."  (Emphasis added).  *See also Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) ("Indeed, in Michigan, one can be convicted under § 750.81d(1) simply for a 'knowing failure to comply with a lawful command.' ").  Thus, Loyd's arrest was supported by probable cause, and his Fourth Amendment claim arising from his seizure/arrest at the scene is without merit.

2.   Excessive Force

Loyd claims that he was subject to "police brutality," and was denied "due process" at the time of his arrest.  (ECF No. 1, PageID.4).  These allegations can be fairly construed as a claim of excessive force under the Fourth Amendment.

A claim of excessive force brought by a free individual, as Loyd was at the time of his arrest, is analyzed under the Fourth Amendment.  *Graham v. Connor,* 490 U.S. 386, 394-95 (1989).  In scrutinizing a claim of excessive force, the constitutional standard is the Fourth Amendment's requirement of reasonableness.  *Id*.  That standard is objective and is applied without reference to the officer's subjective motivations.  *Id.*  In *Gaddis v. Redford Twp.,* 364 F.3d 763, 772 (6th Cir. 2004), the Sixth Circuit set forth the following factors to be considered:

> Courts must apply an objective standard, looking to "the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect pose[d] an immediate threat to the safety of the officers or others, and [3] whether he was actively resisting arrest or attempting to evade arrest by flight."  *Russo v. City of Cincinnati,* 953 F.2d 1036, 1044 (6th Cir. 1992) (quoting *Graham,* 490 U.S. at 396, 109 S.Ct. 1865, 104 L.Ed.2d 443) (brackets added).

This is a non-exhaustive list, and the " 'proper application' of the reasonableness inquiry 'requires careful attention to the facts and circumstances of each particular case....' "  *St. John v. Hickey,* 411 F.3d 762, 771 (6th Cir. 2005) (quoting *Graham,* 490 U.S. at 396).  The standard "contains a built-in measure of

12

deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer,* 310 F.3d 937, 944 (6th Cir. 2002).  A court must recognize that "police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham* at 397.

Loyd and Driggett disagree about the amount of force that was used at the time of the arrest.  Although both agree that Driggett took Loyd to the ground and placed his knee on Loyd's back before handcuffing him, Loyd testified that Driggett punched him in the face four times, using a "hammer punch,"[5] and scratched his face when he knocked his hat off.  The police report makes no mention of Driggett having punched Loyd.

At the summary judgment stage, the Court ordinarily draws all reasonable factual inferences in favor of the non-moving party.  *Anderson v. Liberty Lobby.*  However, in *Scott v. Harris*, 550 U.S. 372 (2007), the Supreme Court gave primacy to a video recording that plainly contradicted the plaintiff's version of events.  In a case that involved a high-speed automobile chase, the plaintiff claimed that the road was mostly empty and that he remained in control of his car.

---

[5] A "hammer punch" is a strike using the side part of the fist or arm; it is used in martial arts such as karate, and has a "massive impact" on the recipient. *Marialartguide.com* (last visited April 3, 2022).

The videotape showed the Plaintiff's car "racing down narrow, two-lane roads in the dead of night at speeds that are shockingly fast."  The car swerved around more than a dozen other cars and forced cars travelling in both directions to the shoulder to avoid being hit.  *Id*. at 379-380.  The Supreme Court stated, "Far from being the cautious and controlled driver the lower court depicts, what we see on the video more closely resembles a Hollywood-style car chase of the most frightening sort...."  *Id*.  Noting that "Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him," the Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id.* at 380.  In such a case, the Court held, there is no "genuine" dispute as to the facts.  *Id*.; *see also Lang v. City of Kalamazoo*, 744 F. App'x 282, 286 (6th Cir. 2018) ("But where there is 'a videotape capturing the events in question,' the Court must 'view[ ] the facts in the light depicted by the videotape.'" (quoting *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012)). In this case, Driggett submitted as Exhibit D a zip drive containing eight video files taken from the dash cam of Driggett's police cruiser and other police cars.  The first and second files, both designated as 058519_180911_0_f.mp4, contain clear views of Loyd's face.  In the first, Loyd is seen at the rear of the police cruiser,

handcuffed and facing the camera.  From minute 2:34 to 5:50, there is a clear view of his face.  He does not show any bruises, redness, bleeding, swelling, scratching, or any other indication that he sustained an injury to his face.

The second video file shows Loyd in the back seat of the police car. Although much of the video shows Loyd with his head turned as he yells out the passenger side window, with the left side of his face visible, there are full frontal views of his face at minutes 10:19 to 10:23 and 12:52 to 13:05.  As in the first video, there are no signs of any trauma anywhere on his face.

As in *Scott*, Loyd's allegations that Driggett "hammer punched" him four times from his forehead to his cheek bone, and under and over his right eye, are "blatantly contradicted" by the video, and there is no genuine dispute of fact regarding the alleged punching that would defeat summary judgment.[6]

This leaves the question of whether Loyd's testimony that Driggett took him to the ground, put his knee on his back, and handcuffed him would support a finding of excessive force.

Looking at the *Gaddis* factors, resisting and obstructing is a two-year felony in Michigan, and can be considered a serious crime.  In addition, Driggett had

---

[6] In his complaint, Loyd alleged that he suffered an asthma attack when Driggett placed his knee on Loyd's back.  Loyd's deposition contains no reference to an asthma attack at the scene of the arrest.  Nevertheless, the video shows Loyd speaking continually in a loud and aggressive voice, with no shortness of breath or any other indication of respiratory difficulties.

received information from the dispatch that the subject who fit Loyd's description had threatened a judge, which increased the seriousness of the encounter and suggested that Loyd posed a threat to another person.  And as discussed above, Loyd disobeyed repeated orders to stop, continued to walk away from Driggett, and actively resisted arrest by pulling away and stating, "Let go of my arm" when Driggett attempted to handcuff him.  That statement in the police report stands unrebutted by any testimony or affidavits.  Under these circumstances and recognizing Driggett's on-the-scene judgment during a rapidly evolving situation, the amount of forced he used was reasonable.  The Sixth Circuit has held that even the use of taser, batons, and pepper spray to subdue "a suspect actively resisting arrest and refusing to be handcuffed" is reasonable.  *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509 (6th Cir. 2012); *see also Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015) (tasering and knee strikes are justified where a person resists arrest by refusing to be handcuffed); *Earnest v. Cty. of Genesee,* No. 2:18-CV-10729, 2020 WL 1285626, at *3 (E.D. Mich. Mar. 18, 2020)*, aff'd sub nom. Earnest v. Genesee Cty., Michigan,* 841 F. App'x 957, 2021 WL 289313 (6th Cir. 2021) (same).

In sum, Driggett is entitled to summary judgment on Loyd's Fourth Amendment excessive force claim.

### 3. Qualified Immunity

Driggett also argues that even if there was a violation of Loyd's

constitutional rights, he is entitled to qualified immunity.  Qualified immunity

shields government officials performing discretionary functions "from liability for

civil damages insofar as their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known." *Harlow*

*v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Created to protect government officials

from interference with their official duties, qualified immunity "is an immunity

from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S.

511, 526 (1985).  It allows police officers "breathing room to make reasonable but

mistaken judgments and protects all but the plainly incompetent or those who

knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (punctuation

modified).  After a defending officer initially raises qualified immunity, the

plaintiff bears the burden of showing that the officer is not entitled to qualified

immunity.  *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).

The Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the

facts in the light most favorable to the plaintiff, we determine whether the

allegations give rise to a constitutional violation; and (2) we assess whether the

right was clearly established at the time of the incident." *Id*. at 472.  The steps may

be considered in either order, so "[i]f the court concludes that no constitutional

violation has occurred, there is no need to address whether the alleged right was clearly established." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

Here, as discussed above, there was no constitutional violation.  Thus, it is not necessary to examine the second prong of qualified immunity.  *See Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002) ("Plaintiff's case is barred by the affirmative defense of qualified immunity at the inception inasmuch as Plaintiff has failed to show a violation of a constitutionally protected right") (citing *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

## B.    State Law Claims

### 1.    False Arrest and False Imprisonment

Under Michigan law, an essential element of a claim of false arrest or false imprisonment is the absence of probable cause.  *See Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18, 672 N.W.2d 351 (2003) ("To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause"); *see also Tope v. Howe*, 179 Mich. App. 91, 105, 445 N.W.2d 452 (1989) (lack of probable cause is an element of a false arrest claim).

As discussed above, Driggett had probable cause to arrest Loyd for the offense of resisting and obstructing a police officer under M.C.L. § 750.81d(1).

Therefore, Driggett is entitled to summary judgment on the claims of false arrest and false imprisonment.[7]

## 2.    Assault and Battery

The common law tort of assault requires a showing of an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich. App. 110, 119, 472 N.W.2d 16 (1991) (citing *Tinkler v. Richter*, 295 Mich. 396, 401, 295 N.W. 201 (1940)).  The tort of battery denotes a "willful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id.*

In terms of the claim of assault, Driggett's actions were not "unlawful," since, as discussed above, he had probable cause to arrest Loyd and used reasonable force to effect the address.  More significantly, Loyd's claims for assault and battery (as well as false imprisonment) are time-barred.  Under M.C.L.

---

[7] To the extent that Loyd is bringing a claim of false arrest under § 1983, it would be based on the Fourth Amendment, which also depends on a finding that there was no probable cause for the arrest. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).  As discussed above, Loyd has not made that showing.

§ 6805(3), "the period of limitations is 2 years for an action charging assault, battery, or false imprisonment." Driggett's actions on which Loyd's complaint are based occurred on September 10, 2018. He filed his complaint on November 5, 2020, more than two years later.

Finally, Driggett is protected by the Michigan Governmental Tort Liability Act (GTLA), M.C.L. § 691.1407(3). In *Odom v. Wayne Cty.*, 482 Mich. 459, 760 N.W.2d 217 (2008), the Michigan Supreme Court held that a governmental official such as a police officer is entitled to immunity under the GTLA for intentional torts[8] if the following elements are met:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

> (b) the acts were undertaken in good faith, or were not undertaken with malice, and

> (c) the acts were discretionary, as opposed to ministerial.

*Id.*, 760 N.W.2d at 228.

Applying the *Odom* test to the present case, when Driggett used physical force to arrest Loyd, he was acting within the scope of his authority as a police officer. *See Jackson v. Lubelan*, No. 13-cv-15178, 2015 WL 8175015, at *4 (E.D. Mich. Dec. 8, 2015), *aff'd in part, remanded in part*, 657 F. App'x 497, 2016 WL

---

[8] Because assault and battery are intentional torts, the *Odom* test applies.

4932166 (6th Cir. 2016) ("A police officer handcuffing a person under arrest...is squarely within the scope of that officer's authority."). Driggett's acts were also discretionary. *See Odom*, 760 N.W.2d at 226 ("Police officers perform many discretionary acts each day. An officer must use his judgment to determine whether there is reasonable suspicion to investigate or probable cause to arrest and to determine the amount of force necessary to effectuate an arrest.").

Finally, Driggett's acts were undertaken in good faith, not with malice. "Good faith" means "acting without malice." *Odom*, 760 N.W.2d 225. Under that standard, "an 'action may lie only if the officer has utilized wanton or malicious conduct or demonstrated a reckless indifference to the common dictates of humanity.' " *Id.* (quoting *Dickey v. Fluhart*, 146 Mich. App. 268, 276, 380 N.W.2d 76, 79 (1985)). The good faith requirement "protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Odom*, 760 N.W.2d at 229.

Here, the evidence shows that Driggett had a good faith belief that Loyd committed the crime of resisting and obstructing a police officer, and used the amount of force he subjectively believed necessary to place Loyd under arrest.[9] There is no basis to conclude that he "utilized wanton or malicious conduct or

---

[9] *Odom* held that a "police officer would be entitled to immunity...if he acted in good faith and honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken."

demonstrated a reckless indifference to the common dictates of humanity."

Driggett is entitled to immunity under the GTLA.

V.     Conclusion

For the reasons stated above, it is RECOMMENDED that Driggett's motion

for summary judgment be GRANTED and Loyd's claims against him be

DISMISSED WITH PREJUDICE.


Dated: April 18, 2022                         s/Kimberly G. Altman
Detroit, Michigan                             KIMBERLY G. ALTMAN
                                              United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 18, 2022.

s/Holly A. Ryan
Holly A. Ryan, in the absence
of Carolyn M. Ciesla
